# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

HABITAT EDUCATION CENTER, INC.,
DAVID ZABER and RICARDO JOMARRON,
        Plaintiffs,

    v.                               **Case Nos. 03C1023**
                                              **03C1024**
                                              **04C0254**

DALE BOSWORTH, as CHIEF OF THE
UNITED STATES FOREST SERVICE,
MIKE JOHANNS, as SECRETARY
OF THE UNITED STATES DEPARTMENT
OF AGRICULTURE, MATT HOGAN, as
ACTING DIRECTOR OF THE UNITED STATES
FISH and WILDLIFE SERVICE, and
GALE NORTON, as SECRETARY OF THE INTERIOR,
        Defendants.

---

## DECISION

      Plaintiffs Habitat Education Center, Inc. and two of its officers brought these actions against several federal officials and agencies (I will refer to defendants individually and collectively as "the government"), alleging that in approving logging activities and timber sales in the Chequamegon-Nicolet National Forest ("CNNF") the government violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1687 and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.  Plaintiffs prevailed in part on their claims, see Habitat Educ. Ctr., Inc. v. Bosworth, 363 F. Supp. 2d 1070 (E.D. Wis. 2005) (McCaslin sale); Habitat Educ. Ctr., Inc. v. Bosworth, 363 F. Supp. 2d 1090 (E.D. Wis. 2005) (Northwest Howell sale); Habitat Educ. Ctr., Inc. v. Bosworth, 381 F. Supp. 2d 842 (E.D. Wis. 2005)

(Cayuga sale), and now seek attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

Under § 2412(d)(1), I must in a civil action brought against the government award fees to a "prevailing party" where the government's position was not "substantially justified." United States v. Hallmark Constr. Co., 200 F.3d 1076, 1078-79 (7th Cir. 2000). The government concedes that plaintiffs are prevailing parties but argues that its position was substantially justified and, alternatively, that plaintiffs' request is excessive.

I first address whether the government's position was substantially justified. To establish substantial justification, the government must show that its position had a reasonable basis both in law and fact, i.e., that it was "'justified in substance or in the main' – that is, . . . to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The government's position need not be "justified to a high degree," but must be "more than merely undeserving of sanctions for frivolousness," id. at 565-66. "EAJA fees may be awarded if either the government's pre-litigation conduct or its litigation position are not substantially justified. However, the district court is to make only one determination for the entire civil action." Id. at 566. Although "being incorrect on one point does not translate into lacking substantial justification for one's litigation position during the entirety of a civil action," Jackson v. Chater, 94 F.3d 274, 279-80 (7th Cir. 1996), "the government's generally justifiable conduct [should not] defeat the otherwise legitimate EAJA claim of a litigant who has succeeded in obtaining precisely the relief it prayed from the government because of the substantially unjustified element under litigation," Air Transp. Ass'n of Canada v. F.A.A., 156 F.3d 1329, 1332 (D.C. Cir. 1998).

2

In the present cases,[1] I concluded that the government violated NEPA by failing to show how it chose the geographic area in which to conduct the cumulative impacts analyses and because it provided insufficient detail in the analyses. I concluded that the first of these violations prevented the public from discovering whether the government considered including in the analyses the effects of five other timber sales that it approved roughly contemporaneously with the Cayuga, McCaslin and Northwest Howell projects. I also found that the government offered no reasoned basis for its failure. With respect to the government's failure to provide sufficient detail in its cumulative impacts analyses, I concluded that the discussions of the red-shouldered hawk, goshawk, certain rare plants, and the American marten, were noticeable for their "almost complete lack of detail," and that the government failed to take the required "hard look" at the cumulative impacts. See Habitat Educ. Ctr., Inc., 363 F. Supp. 2d at 1080 (McCaslin sale); Habitat Educ. Ctr., Inc., 363 F. Supp. 2d at 1101 (Northwest Howell sale); Habitat Educ. Ctr., Inc., 381 F. Supp. 2d at 852 (Cayuga sale).

The government's failures were such that its position was not substantially justified. When an agency omits an area of analysis clearly required by NEPA or its implementing regulations, such as the requirement that the Forest Service show how it chose the geographic area, its position is not substantially justified. Or. Natural Res. Council v. Marsh, 52 F.3d 1485, 1492 (9th Cir. 1995). The strong language that I used concerning

_____

[1]Although courts generally consider fee petitions on an individual case basis, I see no reason not to consider this consolidated petition. See, e.g., Branstad v. Veneman, 232 F. Supp. 2d 945, 946 (N.D. Iowa 2002) (considering a consolidated fee petition even though the court had not formally consolidated the two cases).

the adequacy of the government's cumulative impacts analyses also indicates an absence of substantial justification. Marcus v. Shalala, 17 F.3d 1033, 1038 (7th Cir. 1994) (stating that "strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees"). The government's weak arguments in support of its cumulative impacts analyses also suggest the lack of substantial justification. For example, contrary to the well-established principle that documents in the administrative record cannot cure a deficiency in the EIS, see Grazing Fields Farm v. Goldschmidt, 626 F.2d 1068, 1069 (1st Cir. 1980), the government relied on such documents to support its contention that the EISs were sufficient.

The government argues that its position was substantially justified because it merely failed to "explain[ ] its analysis well enough." (Defs.' Opp'n at 9.) However, this argument minimizes the government's failure. The lack of specificity in its EISs goes to the heart of NEPA, which requires a "detailed statement" concerning "the environmental impact of the proposed action," and "any adverse environmental effects which cannot be avoided." § 4332(2)(C). The government also contends that it is significant that I did not cite Seventh Circuit precedent. However, the absence of precedent in a particular circuit does not mean that the government's position was substantially justified. See, e.g., Halverson v. Slater, 206 F.3d 1205, 1210 (D.C. Cir. 2000) (stating that "[t]here may be no [binding] case law for reasons having nothing at all to do with whether the government's position had merit"). Moreover, the government's reliance on Taucher v. Brown-Hruska, 396 F.3d 1168, 178 (D.C. Cir. 2005), in support of its argument that its position was substantially justified because  no controlling precedent exists, is misplaced. There, the court concluded that the government was substantially justified in defending the constitutionality of a statute that

4

at least one circuit had upheld. In contrast, in the present cases, I found that the government violated NEPA's clear command in two separate respects. See, e.g., Wash. Dep't of Wildlife v. Stubblefield, 739 F. Supp. 1428, 1431 (W.D. Wash. 1989) (concluding that the Forest Service's position was not substantially justified when it ignored statutory obligations). The government also argues that its position was substantially justified because it prevailed on plaintiffs' non-NEPA claims. However, this argument ignores the centrality of the NEPA claims in the present cases. See, e.g., Wates v. Barnhart, 288 F. Supp. 2d 947, 954 (E.D. Wis. 2003) (awarding fees even though the government's position on some issues was reasonable); see also Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 140 (4th Cir. 1992) (stating that "an unreasonable stance taken on a single issue" might undermine the overall reasonableness of the government's position because of its significant effect on the entire action).

Thus, for the reasons stated, I conclude that the government's position was not substantially justified and that plaintiffs are, therefore, entitled to a fee award.

Turning to the amount of the award, § 2412(d)(2)(A) allows for "reasonable attorney fees . . . based upon prevailing market rates for the kind and the quality of the services furnished" not to exceed "$ 125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." However, if a fee request is outrageously high, a court may deny fees altogether. Envtl. Def. Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993). In the present cases, the government first argues that I should disallow fees entirely because plaintiffs request some $670,000, an amount that significantly exceeds the average EAJA fee of $8,479.82. Although plaintiffs' request is high, I disagree

5

that it is so unreasonable as to warrant a complete denial of fees. These cases involved time-consuming work. Plaintiffs had to thoroughly analyze three EISs, three administrative records each consisting of over a thousand pages, as well as information relating to the impacts of timber sales on plant and animal species. In cases of this type, courts often award fees significantly above the average. See, e.g. Ass'n of Cal. Water Agencies v. Evans, 396 F.3d 879 (9th Cir. 2004) (affirming district court's award of $304,530 in attorney's fees); Riverhawks v. Zepeda, No. 01-3035-AA, 2005 U.S. Dist. LEXIS 14168 (D. Or. Apr. 19, 2005) (awarding $107,228 in attorney's fees).

To determine a presumptively reasonable fee award, i.e. the "lodestar," I multiply the number of hours reasonably expended by the appropriate hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[2] However, I may reduce or increase the lodestar based on a variety of factors. Id. at 430 n.3. In determining the number of hours reasonably expended, I must exclude those that are "excessive, redundant, or otherwise unnecessary." Batt v. Micro Warehouse, Inc., 241 F.3d 891, 894 (7th Cir. 2001). Plaintiffs must provide documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty" that the hours claimed were actually and reasonably expended. Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004).

Plaintiffs seek fees for 1817.5 hours. The government makes a number of arguments as to why I should reduce this amount. First, the government argues that I must exclude hours plaintiffs claim for work done in the administrative phase of the cases. I

_____

[2]Although Hensley involved a fee petition in a § 1988 action, it is applicable to petitions under EAJA. Comm'r, INS v. Jean, 496 U.S. 154, 161 (1990).

6

agree. Section 2412(d)(1) authorizes an award "in any civil action . . . in any court." This language plainly limits compensable hours to those expended in a judicial proceeding. See Gregory C. Sisk, The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One), 55 La. L. Rev. 217, 231 (1995) (stating that fees are only available in judicial proceedings); see also Melkonyan v. Sullivan, 501 U.S. 89, 95 (1991) (stating that the unambiguous statutory language authorizes attorney's fees only for hours spent in court). Thus, a prevailing party in a covered civil action may not recover fees incurred in earlier administrative proceedings. LeVernier Constr. v. United States, 947 F.2d 497, 502 (Fed. Cir. 1991); see also Full Gospel Portland Church v. Thornburgh, 927 F.2d 628, 630 (D.C. Cir. 1991).

Title 5 U.S.C. § 504, which authorizes courts to award fees in certain "adversary adjudication[s]" before administrative agencies, reinforces the conclusion that § 2412(d)(1) does not authorize compensation for hours expended in administrative proceedings. The Supreme Court has stated that § 504 "is the only part of the EAJA that allows fees and expenses for administrative proceedings conducted prior to the filing of a civil action." Melkonyan, 501 U.S. at 94; see also Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 467 (9th Cir. 2000) (stating that Melkonyan "squarely supports the government's argument that 5 U.S.C. § 504 governs proceedings before administrative agencies whereas 28 U.S.C. § 2412 governs only proceedings that come under the jurisdiction of the courts").[3]

Plaintiffs argue that Sullivan v. Hudson, 490 U.S. 877, 889-90 (1989), authorizes fee awards for hours expended in administrative proceedings where, as here, such

_____

[3]Plaintiffs cannot request fees under § 504 because the Forest Service's administrative appeal process is not an adversary proceeding.

7

proceedings are "mandatory" and "crucial to the vindication of [plaintiffs'] rights." However, Hudson does not govern the present cases because it involved a unique statute, the Social Security Act, which creates "a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency actions under the APA." Id. at 885. In Hudson, the EAJA applicant sought attorney's fees for hours expended in administrative proceedings after a court had remanded the matter to the Social Security Administration. In allowing fees for such hours, the Court noted that social security claimants "will not normally attain 'prevailing party' status within the meaning of 2412(d)(1)(A) until after the result of the administrative proceedings is known," id. at 886. The Court also relied on the fact that EAJA requires fee petitions to be filed "within thirty days of final judgment," and that when cases are remanded for further administrative proceedings "there will often be no final judgment in a claimant's civil action for judicial review until the administrative proceedings on remand are complete." Id. at 887. In the present cases where the administrative proceedings preceded the civil action, these factors are not present. See Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 888 (8th Cir. 1995) (denying fees for hours expended in the Forest Service's administrative process, despite the fact that plaintiff was required to exhaust administrative remedies); see also Full Gospel Portland Church, 927 F.2d at 631 (concluding that pre-litigation administrative proceedings do not create the requisite degree of direct interaction between a federal court and an administrative agency to justify an award of fees under § 2412).

I note also that courts have declined to extend Hudson to cases like the present ones on the ground that "[t]he EAJA amounts to a partial waiver of the government's sovereign immunity, and, as such, must be strictly construed in the government's favor."

8

<u>Friends of the Boundary Waters</u>, 53 F.3d at 888; <u>see also</u> <u>LeVernier Constr.</u>, 947 F.2d at 502 (stating that the EAJA "is a waiver of sovereign immunity which must be strictly construed" and "[t]hus, when considering matters under the EAJA, a court must interpret and apply the law strictly, and not attempt to 'do equity' in a way that is not in accord with the statute").[4]

Thus, I decline to award fees for attorney hours expended in the administrative process and accordingly will deduct 545 hours, including:  Ann Alexander 235; Howard Learner 24.5; Shannon Fisk 6.25; and Paul Gaynor 279.25.

The government also argues that I should not award fees for hours expended in opposing third-parties' efforts to intervene, emphasizing that it took no position on the issue.  The government relies on <u>Love v. Reilly</u>, 924 F.2d 1492, 1495-96 (9th Cir. 1991), in which the court declined to award fees for efforts that were opposed only by non-governmental parties.  However, courts have criticized <u>Love</u> for being overly formalistic and focusing only on the narrow question of whether the government participated in a particular portion of a suit.  <u>See, e.g.</u>, <u>Am. Lung Ass'n v. Reilly</u>, 144 F.R.D. 622, 629 (E.D.N.Y. 1992).  Further, EAJA authorizes fees in "actions . . . against" the government, thus suggesting

---

[4]Courts have construed other statutes similarly.  <u>See</u> Mary Francis Derfner & Arthur D. Wolf, <u>Court Awarded Attorneys Fees</u> ¶ 13.02[2], at 13-24–13-26 (explaining that in cases arising under the Privacy Act, the Freedom of Information Act, and ERISA, administrative review is mandatory and yet, courts have denied fee awards for agency work because the language of the fee provision is limited "to those fees incurred in civil litigation and does not encompass fees for administrative proceedings") (citing <u>Kennedy v. Andrus</u>, 459 F. Supp. 240, 243 (D.D.C. 1978) (Privacy Act); <u>Associated Gen. Contractors, N. Nev. Chapter v. EPA</u>, 488 F. Supp. 861 (D. Nev. 1980) (Freedom of Information Act) and <u>Parke v. First Reliance Standard Life Ins. Co.</u>, 368 F.3d 999, 1010-1011 (8th Cir. 2004) (fee provision of ERISA providing for fees in any covered "action" does not include fees for preparatory administrative proceeding)).

that Congress intended to provide compensation for hours reasonably expended in "portions of a civil action during which the government did not participate." Ass'n of Am. Physicians & Surgeons, Inc. v. FDA, 391 F. Supp. 2d 171, 179 (D.D.C. 2005). Thus, I decline to deduct hours expended in opposing the motion to intervene.

The government also argues that plaintiffs claim excessive and redundant hours. First, it contends that plaintiffs' request for 159.75 hours for drafting complaints is excessive. However, the complaints in question were detailed and highly fact intensive and clearly involved a great deal of work. Thus, I cannot conclude that the hours claimed are excessive. The government also asks me to deduct the hours expended by attorneys Gaynor and Alexander because they "invested heavily in learning the facts and law and then departed the case" (Defs.' Opp'n at 24), and those expended by attorney LaSeur at a settlement conference. I decline to deduct Gaynor's and Alexander's hours merely because they did not remain on the case. When a number of lawyers work on a case, some duplication is inevitable and not inherently unreasonable. See Alba Conte, Attorney Fee Awards § 4:9, n.19 (3rd ed. 2004) (stating that "[l]awyers who jointly represent plaintiffs will usually have to duplicate some underlying efforts"). Moreover, in the present cases, I have already accounted for most of the duplication of Gaynor's and Alexander's time by eliminating the hours expended in administrative proceedings. I will, however, deduct LaSeur's ten hours at the settlement conference as she was one of three attorneys representing plaintiffs, and plaintiffs do not justify the need for her presence. See Singer v. Shannon & Luchs Co., 779 F.2d 69, 70-71 (D.C. Cir. 1985) (stating that "[a]bsent some explanation, a fee attributable to expenses incurred by several attorneys in attendance at hearings . . . would appear to be excessive"); see also Nat'l Ass'n of Concerned Veterans

10

<u>v. Sec'y of Def.</u>, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (stating that fees are not recoverable for non-productive time).[5]

The government also argues that I should deduct 109.5 hours billed by attorney Fisk (61 hours in September 2004 and 48.5 hours in February 2005) because plaintiffs do not support such hours with contemporaneous time records. Plaintiffs state that Fisk has been unable to locate his time sheets for these months and that he has reconstructed his hours. Reconstructed records may serve as the basis for a fee award as long as the applicant produces sufficient evidence to support the request. <u>See, e.g.</u>, <u>Heasley v. Comm'r, IRS</u>, 967 F.2d 116, 123 (5th Cir. 1992); <u>see also</u> Gregory C. Sisk, <u>The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)</u>, 56 La. L. Rev. 1, 111 (hereinafter "<u>Part Two</u>") (1995) (stating that an attorney may reconstruct time records after the fact, if she can show they are accurate).

In the present cases, I will not reduce plaintiffs' hours on account of reconstructed records because such hours appear to be reasonable. The hours Fisk billed in September 2004 and February 2005 are consistent with his billings in other months. Further, the billings appear to be proportionate to the tasks performed. In September 2004, Fisk worked on plaintiffs' summary judgment reply in the Northwest Howell and Cayuga cases and engaged in settlement discussions. And in February 2005, he worked closely with attorney Learner in preparing for oral argument in the Northwest Howell case. He also

_____

[5]The government also complains that plaintiffs include in their fee request hours spent on non-compensable tasks such as lobbying activities. However, some of the hours that the government objects to were expended on compensable tasks, such as revising complaints and editing briefs. Moreover, plaintiffs have eliminated 22.25 hours to account for non-compensable work. Upon review of the record, I conclude that no further reduction is required.

11

provided me with additional case authority and responded to the government's Supplemental Information Report.

The government also argues that many of plaintiffs' lawyers' entries are vague, making it impossible to determine their reasonableness. For example, some entries state only "Chequamegon," "email," "research," "review docs," or "strategy." Courts routinely conclude that such entries are insufficiently specific. <u>See, e.g.</u>, Sisk, <u>Part Two</u>, <u>supra</u>, at 112 n. 685 (collecting cases); <u>see also H.J. Inc. v. Flygt Corp.</u>, 925 F.2d 257, 260 (8th Cir. 1991) (finding inadequate such entries as "legal research," "trial prep," and "met with client"); <u>In re Meese</u>, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (finding entries inadequate "where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); <u>Dailey v. Societe Generale</u>, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996) (holding "entries listed simply as 'telephone call,' 'consultation' and 'review of documents' insufficiently specific to support an award). Thus, I decline to allow fees for hours recorded in such vague entries.

The government further argues that plaintiffs' lawyers improperly engaged in "block billing." <u>See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.</u>, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996) (stating that "block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks"). For instance, attorney Alexander billed 8.25 hours for research on cumulative impacts and work on a radio spot without breaking down by task the hours expended. Where plaintiffs' lawyers rely on block billing, I am unable to evaluate the reasonableness of their expenditure of hours, <u>see Role Models Am., Inc.</u>, 353 F.3d at 971, and thus decline to award fees based on such hours, <u>see</u>

12

Tomazzoli v. Sheedy, 804 F.2d 93, 98 (7th Cir. 1986) (affirming district court's reduction of fees, in part, because "the total number of hours attributable to research alone is uncertain; in some instances [the attorney] lists 'research' along with other tasks performed and gives but a single total for the combined work"). Thus, where plaintiffs rely on block-billing, I will make appropriate reductions.[6]

When a fee petition includes entries that are overly vague or inadequately documented or employs block billing, a court may either strike the problematic entries or (in recognition of the impracticality of performing an item-by-item accounting) reduce the proposed fee by a reasonable percentage. Harper v. City of Chi. Heights, 223 F.3d 593, 604 (7th Cir. 2000). In the present cases, I will use the former method and deduct 181.75 hours.[7] Thus, I have deducted a total of 736.5 hours from plaintiffs' request [545 + 10 + 181.75] leaving a total of 1081 compensable hours [1817.5 - 736.5].

_____

[6]The government also argues that I should reduce plaintiffs' requested hours because plaintiffs' attorneys fail to identify which of several distinct claims a time entry relates to. In Hensley, the Court explained that "[f]actually unrelated claims are treated as separate lawsuits, and therefore, if the plaintiff loses on such a claim he is not to be reimbursed for the attorney's fees allocable to it." Hensley, 461 U.S. at 437 & n.12. Thus, a fee applicant must provide records identifying "the general subject matter of his time expenditures," such that "a reviewing court [can] identify distinct claims" so that the fee applicant will only be reimbursed for the factually related claims. Id. I will consider the issue of plaintiffs' billings for distinct claims in the context of plaintiffs' level of success. See, e.g., Am. Canoe Ass'n v. EPA, No. 98-979A, 2001 U.S. Dist. LEXIS 4593, at *49-52 (E.D. Va. Apr. 9, 2001) (considering the EPA's argument that plaintiff failed to identify specific claims in the context of whether the claims were related).

[7]In determining the amount of the deduction, I rely in part on the government's exhibit 4, which identifies the time entries that are inappropriately vague or use block billing. However, I have already deducted some of the hours the government objects to because they were expended in administrative proceedings, and I will not deduct them twice. Additionally, I have not deducted attorney Fisk's reconstructed time.

13

Turning to the question of appropriate hourly rates, plaintiffs ask me to enhance the statutory rate of $125 per hour because of their expertise in environmental law. As indicated, § 2412(d)(2)(A) caps hourly rates at $125 "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The phrase "qualified attorneys" makes reference to qualifications "in some specialized sense," i.e., to "distinctive knowledge or specialized skill," Pierce, 487 U.S. at 572, surpassing that which could "be easily acquired by a reasonably competent attorney," Raines v. Shalala, 44 F.3d 1355, 1361 (7th Cir. 1995). "[A] 'special factor' enhancement is warranted only in an unusual case that requires 'specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles.'" Sisk, Part Two, supra, at 155 (citing Chynoweth v. Sullivan, 920 F.2d 648, 650 (10th Cir. 1990)).

When cases do not require specialized skill, courts should not enhance hourly rates even if the field of law involved is considered a specialty. See United States v. Real Property Known as 22249 Dolorosa St., 190 F.3d 977, 984 (9th Cir. 1999) (stating that even in cases in specialized field, in the absence of complex factual or legal issues unique to that field, a court should not enhance the hourly rate); see also Chynoweth, 920 F.2d at 650 (stating that enhancement is permitted only "where legal services rendered require specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles"). In determining whether special knowledge is required, "the appropriate inquiry is whether the individual case presents such an 'unusual' situation that it requires someone of specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." Raines, 44

14

F.3d at 1361; see also Atl. Fish Spotters Ass'n v. Daley, 205 F.3d 488, 492 (1st Cir. 2000) (stating that "the question is not whether counsel's experience in [environmental] law is helpful or productive but whether it is essential for competent representation.")

Finally, "[o]nce the court determines a specialized expert is required to competently litigate a case, a separate determination must be made that specialized counsel cannot be obtained at or below the statutory rate cap before a court may award fees at a higher rate." 14A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §3660.1, at 60 (Supp. 2005). Thus, to obtain an enhanced rate, plaintiffs must establish that the specialized skill required is not "available elsewhere at the statutory rate," Love, 924 F.2d at 1496, by submitting evidence that they "would be unable to find" a lawyer with such skill at the statutory rate, Atlantic Fish, 205 F.3d at 493. Simply stating that such lawyers are rare does not satisfy this burden. Id.

The government objects to plaintiffs' requested rates on the grounds that: (1) environmental law is not a specialty under EAJA; (2) plaintiffs' lawyers do not possess special expertise; (3) the present cases did not require special expertise; (4) plaintiffs do not establish that qualified lawyers were unavailable at the statutory rate; and (5) that even if enhancements are appropriate, Milwaukee rather than Chicago rates apply. Even assuming that environmental law is a specialty, for the reasons that follow I conclude that plaintiffs are not entitled to enhanced rates.

First, as to the question of special expertise, prior to the present cases, plaintiffs' attorneys Geertsma, LaSeur, and Gaynor did not have significant environmental law experience. Geertsma and LaSeur graduated from law school relatively recently, and while they worked elsewhere before joining the Environmental Law and Policy Center, they did

15

not work on environmental issues. Gaynor has considerable litigation experience but not in environmental law, and general litigation experience does not qualify one for enhanced fees. See Raines, 44 F.3d at 1360 (stating that in order to qualify for enhanced fees, attorneys must have "some distinctive knowledge or specialized skill needful for the litigation in question--as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation"). Moreover, plaintiffs' argument that their attorneys are entitled to enhanced fees because they work at a public interest environmental litigation firm is unpersuasive. Contrary to plaintiffs' assertion, Washington Department of Wildlife v. Stubblefield, 739 F. Supp. 1428 (W.D. Wash. 1989), does not stand for the proposition that all attorneys who work at a public interest law firm are entitled to enhanced rates. Although the court in Washington noted that plaintiff's attorney worked at a public interest environmental litigation firm, the court also examined the attorney's qualifications in order to determine if he should receive enhanced rates. Id. at 1432.

Second, although plaintiffs' lawyers did an excellent job in the present cases, I am not persuaded that the cases required "someone of specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." Raines, 44 F.3d at 1361. As the Atlantic Fish court pointed out:

> [m]odern administrative law involves, in practically every area, a tangle of discrete regulations, various precedents, a bureaucratic vocabulary and some background knowledge about the kinds of events commonly involved (which may, for example, be scientific, business related, or medical) . . . But in most cases an otherwise competent lawyer can–albeit at the cost of some extra time–learn enough about the particular controversy to litigate in the area adequately, although perhaps not as well as a long-time specialist.

205 F.3d at 492. In the present cases, although plaintiffs' attorneys' familiarity with NEPA and with the Forest Service's administrative processes was surely helpful, such knowledge

16

is not unattainable by a competent attorney. Courts have written extensively about NEPA and its implementing regulations and the Forest Service's administrative processes. The present cases did not require knowledge of complex chemical, ecological or silvicultural principles that lawyers of ordinary competence could not master, albeit at a cost of some extra time. Plaintiffs did not raise difficult scientific or technical issues but rather objected to the absence of information and specificity in the government's analyses. See, e.g., Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 950-51 (D.C. Cir. 2005) (stating that attorney's knowledge of complex area of federal regulation was not a "special factor" in the particular case before the court).

Finally, plaintiffs present no evidence that they could not obtain qualified counsel at the statutory rate. Their affidavits in support of their fee petition are silent on this point. Although plaintiffs briefly discuss the issue in their reply brief, their statements are conclusory and unsupported any form of documentation. See Atlantic Fish, 205 F.3d at 493 (noting that simply stating that there are few lawyers in the country with the same expertise does not satisfy plaintiffs' burden).

For the above reasons, I decline to enhance plaintiffs' attorneys' hourly rates. However, plaintiffs are entitled to a cost of living adjustment. To establish the appropriate rates for the years in which plaintiffs' attorneys performed work, I must determine how much consumer prices have increased since March 1996, when Congress set the statutory rate at $125. I do so by using the consumer price index for urban consumers (CPI-U), which represents the change in price of all goods and services purchased for consumption by urban households. I calculate the rate for 2003 at $147.72; for 2004 at $151.65; and

17

for 2005 at $156.79. See Marcus, 17 F.3d at 1040. Applying these rates to plaintiffs'
hours results in a lodestar amount of $164,052.80.

As previously indicated, I may adjust the lodestar amount in light of a number of
factors. One such factor is "'the degree of success obtained.'" Spegon v. Catholic Bishop
of Chi., 175 F.3d 544, 550 (7th Cir. 1999) (quoting Hensley, 461 U.S. at 436). The
government argues that I should reduce the lodestar amount because plaintiff achieved
only partial success. In considering whether to adjust the lodestar, I apply a two-part test.
Hensley, 461 U.S. at 434. I first ask whether plaintiffs' successful and unsuccessful claims
were related, i.e., whether they arose out of a common core of facts or were based on
related legal theories, and if I conclude that they were, I ask whether plaintiffs achieved a
level of success that justifies an award. Id. If plaintiffs obtained all that they "'reasonably
could have asked for,'" they should be fully compensated. Jaffee v. Redmond, 142 F.3d
409, 414 (7th Cir. 1998) (quoting Lenard v. Argento, 808 F.2d 1242, 1245 (7th Cir. 1987)).
However, I may reduce the lodestar when it is excessive given the degree of success.
"This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and
raised in good faith." Hensley, 461 U.S. at 436. Thus, if a plaintiff achieved limited
success, I should "award only that amount of fees that is reasonable in relation to the
results obtained." Id. at 435.

In the present cases, plaintiffs' claims arose out of a common core of facts – the
government's issuance of allegedly non-compliant EISs and its alleged unlawful approvals
of timber sales. Thus, plaintiffs' claims are related. See Citizens Council of Del. County
v. Brinegar, 741 F.2d 584, 596 (3d Cir. 1984) (finding claims against agency related as
arising out of a common core of facts). Nevertheless, plaintiffs achieved only partial

18

success. They brought claims under NEPA, NFMA and the ESA, and they sought a variety of relief. They prevailed only on portions of one of their NEPA claims and lost on their NFMA and ESA claims. Moreover, they obtained only portions of the relief that they requested. Thus, I conclude that it is appropriate to reduce the lodestar amount.

As discussed, I found the government's cumulative impacts analyses deficient in two respects and ordered the government to correct the deficiencies. However, I ruled against plaintiffs on their claim that the government violated NEPA by failing to consider opposing scientific information, and I therefore declined to require the government to consider such information. I also ruled against plaintiffs on their NFMA claim that the projects could not be approved under the 1986 CNNF plan and therefore declined to require the government to reconsider the projects under a more recent (2004) plan. I also found that plaintiffs had failed to establish that the government collected insufficient data regarding management indicator species, that it had not reduced road density enough, and that it had inadequately analyzed the effects of the Northwest Howell Project on the Canada lynx, and I declined to order the government to take action in those areas.

Thus, plaintiffs achieved less than all the relief that they sought and hours represented in the lodestar do not form a "satisfactory basis for making a fee award." Hensley, 461 U.S. at 434; see also City of Carmel-by-the-Sea v. U.S. Dep't of Transp., 123 F.3d 1142, 1167-68 (holding that where plaintiffs brought five claims against an EIS, they could only be awarded fees for the claims on which they prevailed); Or. Natural Res. Council, 52 F.3d at 1493 (holding that where plaintiffs prevailed only on their cumulative impacts claim and lost on other NEPA claims, they could only obtain fees for cumulative impacts claim).

In reducing the lodestar amount to account for partial success, I may eliminate specific hours or simply reduce the award so as to make it proportionate to the degree of success as possible. I have some discretion in making this equitable judgment. Hensley, 461 U.S. at 436-37. In the present cases, although I would prefer to identify specific hours, I cannot do so because plaintiffs' time entries do not identify particular claims and because it is not obvious from the entries which claim the billing relates to. Thus, because "no exact calculation of the time reasonably required to prepare and litigate [these] cases if th[ese] case[s] had been confined to [their] meritorious issues is possible," I must resort to using my "best estimate" to determine the appropriate award. Divane v. Krull Elec. Co., 319 F.3d 307, 316 (7th Cir. 2003). I must also consider the nature and significance of the relief. Sisk, Part Two, supra, at 124 ("Success in a case is a qualitative, rather than a mathematical question, requiring an evaluation of not only the number of claims or issues but also the nature and significance of the relief.")

The government argues that I should apportion the number of hours equally among the claims and then reduce the number of hours in proportion to plaintiffs' win/loss ratio. However, the Supreme Court has rejected the use of a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon" and has noted that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." Hensley, 461 U.S. at 435 n.11. Rather, I conclude that an award of fifty percent of the hours expended is reasonable in relation to the results achieved. Had plaintiffs prevailed on all of their claims, the government would likely have been required to make significant additional efforts to comply with my order on remand. However, I decline to reduce the award more because even though plaintiffs did not obtain all that they

20

sought, they obtained a significant victory. They prevailed on the claim that appeared (based on their briefs and particularly on their oral argument) to be most central to their suit – their challenge to the cumulative impacts analyses. Further, they also obtained an injunction against proceeding with the projects and against the timber sales until the government cured the deficiencies in the cumulative impacts analyses. Further, I estimate that if plaintiffs had only pursued the challenge to the cumulative impacts analyses, they would have expended about half of the time that they did in the present cases. They would have had to spend considerable time reviewing the administrative records even if they had only brought the cumulative impacts claims. And, they would have had to spend a great deal of time building persuasive arguments that the EISs were deficient. Finally, when compared to other claims such as the claim that the road density standards in the McCaslin area were exceeded, which required only relatively straightforward comparison of numbers, plaintiffs' cumulative impacts claims were relatively complex. These claims required a review of the relevant law and the administrative records, not only for the timber sales at issue, but also for the timber sales that plaintiffs claimed should have been considered. Thus, developing these claims required more hours than did plaintiffs' other claims. Accordingly, I will reduce the fee award to $82,026.40 [$164,052.80 * .5].

  For the reasons stated above,

  **IT IS ORDERED** that plaintiffs' motions for attorney's fees are **GRANTED** and attorneys fees are awarded in the amount $82,026.40.

  Dated at Milwaukee, Wisconsin this 28 day of March, 2006.

/s_____
LYNN ADELMAN
District Judge

Case 2:04-cv-00254-LA    Filed 03/29/06    Page 21 of 21    Document 115