# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

Habitat Education Center, David Zaber,
Ricardo Jomarron, Don Waller and Environmental
Law and Policy Center,                                    CIV. NO. 04-C-0254

                **Plaintiffs,**                         **SUPPLEMENTAL COMPLAINT**
                                                         **FOR DECLARATORY AND**
    **v.**                                               **INJUNCTIVE RELIEF**

United States Forest Service, Gail R. Kimbell,
as Chief of the U.S. Forest Service, and Charles
Conner, as Acting Secretary of the U.S. Department
of Agriculture,

                **Defendants.**
_____

      Plaintiffs Habitat Education Center, David Zaber, Ricardo Jomarron, Don Waller and

Environmental Law and Policy Center hereby supplement their Complaint originally filed on

March 15, 2004 to seek declaratory and continued injunctive relief against Defendants United

States Forest Service, Gail R. Kimbell, in her official capacity as Chief of the United States

Forest Service, and Charles Conner, in his official capacity as Acting Secretary of the United

States Department of Agriculture (collectively, the "Forest Service"), with regard to their re-

approval of the same "McCaslin Project" declared in violation of federal environmental laws and

enjoined by this Court in 2005. The McCaslin Project includes specific timber sales and 8,688

acres of logging, and road construction, reconstruction and maintenance activities in the

Chequamegon-Nicolet National Forest near Lakewood in northern Wisconsin.  In support of this

Supplemental Complaint, Plaintiffs state the following:

1

Case 2:04-cv-00254-LA   Filed 02/06/2008   Page 1 of 24   Document 171-2
Case 1:04-cv-00254-LA   Filed 02/06/2008   Page 1 of 24   Document 164-2

# I.    INTRODUCTION

1.   This action involves the Defendants' continued violations of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), the National Forest Management Act, 16 U.S.C. 1600-1687 ("NFMA"), and the Administrative Procedure Act, 5 U.S.C. §§ 553, 559 and 701-706 ("APA"), in connection with Defendants' decision to re-approve the same extensive logging and road construction, reconstruction and maintenance activities throughout the proposed McCaslin Project area.

2.   This Court declared unlawful and enjoined the McCaslin Project timber sale and related activities in Habitat Education Center v. Bosworth, 363 F. Supp. 2d 1070 (E.D. Wis. 2005) because the Defendant Forest Service failed to conduct a lawful cumulative impacts analysis as required by the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"). The Court's order remanded the case to the Forest Service for "proceedings consistent with this opinion" and enjoined the "McCaslin Project until such time as the [Environmental Impact Statement] complies with NEPA." Id. at 1090.

3.   In enjoining the McCaslin timber sale, the Court found that Plaintiffs would suffer irreparable injury if the Defendant moved forward with 8,688 acres of logging under an unlawful Environmental Impact Statement. Habitat Education Center, 363 F. Supp. 2d at 1089.

4.   On remand, the Defendant Forest Service has re-approved the same McCaslin Project, which was previously invalidated and enjoined by the Court. This Project consists of the same 8,688 acres of logging and the same 3 miles of road construction that were originally proposed, as well as 7 of the 14.3 miles of road re-construction that were originally proposed.

5.   Defendants' continued approvals of the same extensive logging and road construction, reconstruction and maintenance activities proposed violate NEPA and other federal

2

Case 2:04-cv-00254-LA   Filed 02/08/08   Page 2 of 24   Document 171-2

environmental laws intended to protect important natural resources, rivers and streams, wildlife habitat, biodiversity and recreational opportunities.

6. Plaintiffs are supplementing their original Complaint in this case to address the Forest Service's Supplemental Environmental Impact Statement for the McCaslin timber sale and the Defendants' continued violations of NEPA, NFMA and the APA.

7. Defendants Forest Service, Kimbell and Conner have violated NEPA because they: (a) failed to reasonably, effectively and fully conduct a cumulative impacts analysis that thoroughly and accurately accounts for the effects of all past, present and reasonably foreseeable future logging and road-building activities, public and private, on the forest ecosystem, including impacts to wildlife habitat and populations of rare, threatened, endangered and sensitive species, and other natural resources in the McCaslin Project Area and across the Chequamegon-Nicolet National Forest; (b) failed to "rigorously explore and objectively evaluate all reasonable alternatives" that would restore and improve habitat for forest interior species of concern; and (c) failed to rely upon the most recent and the most reliable scientific information.

8. Defendants Forest Service, Kimbell and Conner have violated NFMA because they failed to ensure that implementation of activities proposed in their selected logging and road-building activities will not jeopardize the viability of Regional Forester Sensitive Species ("RFSS") that occur in the McCaslin Project area and across the Chequamegon-Nicolet National Forest.

9. The Defendants' violations of NEPA and NFMA are arbitrary and capricious, not in accordance with law, an abuse of discretion, and do not follow procedures required by law and, therefore, violate the APA. 5 U.S.C. § 706(2)(A &D).

10. Unless the existing injunction continues in effect, the Defendants' actions will cause irreparable harms to natural resources, threatened, endangered and sensitive species, and

environmental quality, to the Plaintiffs' organizations and their members, to the individual Plaintiffs, and to the public in the manner described herein, in violation of federal law and contrary to the public interest. Plaintiffs seek declaratory and continued injunctive relief and their reasonable attorney's fees and costs.

## II. <u>JURISDICTION AND VENUE</u>

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, as this action presents cases and controversies under the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370a ("NEPA"), the National Forest Management Act, 16 U.S.C. §§ 1600-1687 ("NFMA"), and the Administrative Procedure Act, 5 U.S.C. §§ 553-559 and 701-706 ("APA").

12. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

13. Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

14. This Court retains jurisdiction to enforce the terms of the injunction it has issued against the McCaslin Project. "When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction." <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1183 (7th Cir. 1985). This Court expressly retained jurisdiction "to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of this injunction." Judgment Order April 4, 2005, Habitat Education Center Doc. No. 80.

15. Venue is proper in the United States District Court for the Eastern District of Wisconsin, pursuant to 28 U.S.C. § 1391(e)(2), because the Regional Office of the United States Forest Service, which issued the final approval of the McCaslin Project timber sale, is located in Milwaukee.

16. Plaintiffs have no adequate remedy at law. Unless this Court grants the relief requested herein, the Defendants' actions will cause irreparable harms to natural resources, threatened, endangered and sensitive species, and environmental quality, to the Plaintiff organizations and their members, to the individual Plaintiffs and to the public in the manner described herein, in violation of federal law and contrary to the public interest. No monetary damages or other legal remedy could adequately compensate Plaintiffs, the Plaintiff organizations' members, or the public for these irreparable harms. Plaintiffs and the members of the Plaintiff organizations are persons adversely affected or aggrieved by federal agency action within the meaning of Section 702 of the Administrative Procedure Act.

### III. PARTIES

17. Plaintiff Habitat Education Center is a not-for-profit citizens' organization, which is engaged in forest and wildlife protection and management and public education activities. The Habitat Education Center has been active in issues involving management and protection of the Chequamegon-Nicolet National Forest for many years, and it has members and supporters that use and enjoy the area in and around the McCaslin Project area for a variety of recreational purposes. They would be harmed by the timber sales, logging activities, road construction and reconstruction, operations and maintenance and other related activities approved by the Defendants' actions.

18. Plaintiff Environmental Law and Policy Center is a not-for-profit public interest environmental organization working to preserve natural resources and improve environmental quality and the overall quality of life in our communities. The Environmental Law and Policy Center has worked to protect the Chequamegon-Nicolet National Forest for several years, and it

has members and supporters that use and enjoy the Chequamegon-Nicolet National Forest for a variety of recreational purposes. They would be harmed by the timber sales, logging activities, road construction and reconstruction, operations and maintenance and other related activities approved by the Defendants' actions.

19. Plaintiff David J. Zaber is the Vice-President of the Habitat Education Center. He uses the Chequamegon-Nicolet National Forest for recreation, scientific study, and educational and spiritual purposes. He has visited the McCaslin Project area, as well as other areas of the Chequamegon-Nicolet National Forest, on multiple occasions during the past several years. Through the Habitat Education Center, he conducts programs focusing on bringing youth to the National Forest for educational purposes. He plans to continue to use the Chequamegon-Nicolet National Forest and the McCaslin Project area for these purposes in the future.

20. Plaintiff Ricardo Jomarron is the President of the Habitat Education Center. He uses the Chequamegon-Nicolet National Forest for recreational and professional purposes, particularly the older closed canopy mixed hardwood areas of the forest. In the Chequamegon-Nicolet National Forest, he has videotaped forest education interviews and habitat visuals, has conducted school field trips, and is currently advising on an on-site research project on American pine marten. He plans to continue to use the Chequamegon-Nicolet National Forest and the McCaslin Project area for these purposes in the future.

21. Plaintiff Don Waller is a Professor of Botany at the University of Wisconsin-Madison and uses the Chequamegon-Nicolet National Forest for scientific study and recreational purposes. Professor Waller is currently conducting experimental research on hemlock and cedar regeneration and is studying the impacts of deer populations on plants on the Nicolet side of the Chequamegon-Nicolet National Forest. He is also involved in surveying long-term changes in

forest structure throughout the Chequamegon-Nicolet National Forest. He has visited the McCaslin Project area, as well as other areas of the Chequamegon-Nicolet National Forest, for these purposes on multiple occasions during the past several years. He plans to continue to use the Chequamegon-Nicolet National Forest and the McCaslin Project area for these purposes in the future.

22. Defendant United States Forest Service is an agency of the United States Department of Agriculture, which has responsibility for the management and protection of the Chequamegon-Nicolet National Forest, including the McCaslin Project area. Gail R. Kimbell is chief of the Forest Service, and Charles Conner is the Acting Secretary of the United States Department of Agriculture. They are the persons responsible for ensuring that all actions taken under the authority of the Forest Service are in full compliance with federal law. Defendants Kimbell and Conner are sued in their official capacities.

## IV.     FACTUAL AND PROCEDURAL BACKGROUND

23. The Chequamegon-Nicolet National Forest covers approximately 1.5 million acres in Northern Wisconsin. It consists primarily of northern hardwood, mixed conifer and aspen trees, along with numerous rivers, lakes and other waterways.

24. The Chequamegon-Nicolet National Forest provides habitat for more than 300 species of wildlife, including several Federally-listed threatened and endangered species and State-listed endangered and threatened species such as the Northern goshawks (*Accipiter gentiles*), Red-shouldered hawks (*Buteo linneatus*) and American pine marten (*Martes Americana*). It contains the only habitat in Wisconsin for the State-listed endangered American pine marten.

25. On information and belief, more than 160,000 people each year visit the Chequamegon-Nicolet National Forest for fishing, hunting, camping, hiking, canoeing and other recreational activities.

26. The Chequamegon-Nicolet National Forest is located within portions of 41 different river basins, of which 19 drain through the Great Lakes to the Atlantic Ocean and 22 drain through the Upper Mississippi River to the Gulf of Mexico.

27. In 2004, the Defendant Forest Service issued its final Forest Plan for the Chequamegon-Nicolet National Forest, as required by NFMA and its 1982 implementing regulations, which the Plan expressly adopts. The 2004 Forest Plan states that a primary goal is to maintain a healthy and sustainable forest ecosystem. The Forest Plan identifies a number of objectives including preserving and restoring populations of sensitive species, as well as improving habitat for those species within the Chequamegon-Nicolet. National Forest, in order to fulfill this goal.

28. A forest plan is implemented through individual "projects" including timber sales and logging activities and road construction, reconstruction and maintenance activities. All such projects must be fully consistent with the approved Forest Plan. 16 U.S.C. § 1604(i).

29. In 2003, the Forest Service proposed and approved six timber sales in the Chequamegon-Nicolet National Forest: the Cayuga, Gilman Tornado, Hoffman-Sailor West, McCaslin, Northwest Howell and Sunken Moose projects. These timber sales cumulatively involve more than 40,000 acres of logging and 34 miles of road construction and reconstruction.

30. Plaintiffs challenged the Defendant Forest Service's approval of the Northwest Howell, McCaslin and Cayuga timber sales by filing appeals in this Court based upon violations of NEPA, NFMA and the APA. This Court found that the Defendants violated NEPA and the APA and enjoined all three timber sales in 2005. Habitat Education Center v. Bosworth, 381 F. Supp.

2d 842 (E.D. Wis. 2005); 363 F. Supp. 2d 1090 (E.D. Wis. 2005); 363 F. Supp. 2d 1070 (E.D. Wis. 2005). The Court enjoined all three projects until such time as the Forest Service produces an EIS that "complies with NEPA." Habitat Education Center, 381 F. Supp. 2d at 864; 363 F. Supp. 2d at 1115; 363 F. Supp. 2d at 1090. Injunctions on logging and road-building in the McCaslin, Northwest Howell and Cayuga project areas remain in effect.

31. In February 2006, the Forest Service issued Draft Supplemental Environmental Impact Statements ("EIS") for the McCaslin and Northwest Howell timber sales, respectively. On March 27, 2006, Plaintiffs filed twelve single-spaced pages of written comments on these Draft Supplemental EIS with detailed legal, scientific and policy objections to specified aspects of each of the proposed McCaslin and Northwest Howell timber sales.

32. In September 2006, the Forest Service issued the Final Supplemental EIS and Record of Decision ("ROD") approving the McCaslin timber sale. The Forest Service made no changes at all to its selected alternative in response to comments submitted by the Plaintiffs.

33. The McCaslin Project originally proposed involved 8,688 acres of timber cutting, 3 miles of new road construction, and 14.3 miles of reconstruction activities on existing roads near Lakewood, Wisconsin, on the Nicolet side of the National Forest. The McCaslin Project has not significantly changed. The Defendants' proposed timber sale still involves the same 8,688 acres of timber cutting, the same 3 miles of new road construction, and 7 of the 14.3 miles of road reconstruction activities.

34. The Final Supplemental EIS confirms the presence or possible presence of identified Federally-listed threatened and endangered species, as well as State-listed threatened and endangered species within the McCaslin project area. The Final Supplemental EIS also confirms that the McCaslin project area contains populations of Regional Forester Sensitive Species

9

("RFSS"). RFSS are those plants and animal species identified by the Defendant Forest Service's Regional Forester for which population viability is a concern as evidenced by: (a) significant current or predicted downward trends in numbers and density; and (b) significant current or predicted downward trends in habitat capability that would reduce a species' existing distribution. Forest Service Manual 2670.5(19).

35. On October 31, 2006, pursuant to 36 C.F.R. Part 215, Plaintiffs filed a written appeal of the 2006 McCaslin Final Supplemental EIS and ROD with the Regional Forester for Region 9 of the United States Forest Service. The appeal was twenty-two single-spaced pages of written comments with detailed legal, scientific, and policy objections to specified aspects of the McCaslin timber sale.

36. Plaintiffs' appeal contended that the Forest Service continues to violate NEPA because it: (a) failed to fully and fairly analyze the "cumulative impacts" of all past, present and reasonably foreseeable, public and private, timber sales and logging and road construction, reconstruction, and maintenance activities in the Chequamegon-Nicolet National Forest area; (b) failed to rigorously explore and objectively evaluate all reasonable alternatives; and (c) failed to rely upon the most recent and reliable scientific information. Plaintiffs' appeal also contended that the Forest Service has violated NFMA because the agency failed to ensure that viable populations of sensitive species will be maintained.

37. On November 20, 2006, the parties commenced an informal disposition process in accordance with 36 C.F.R. § 215.16. No agreement was reached.

38. On December 14, 2006, the Appeal Deciding Officer affirmed the McCaslin ROD as originally issued, notwithstanding extensive comments and objections submitted by Plaintiffs. That final agency action is the subject of this Supplemental Complaint.

39. In April 2007, Plaintiffs moved this Court to appoint a Magistrate Judge to conduct further settlement discussions between the parties regarding the McCaslin timber sale. This Court granted Plaintiffs' motion, and initial settlement discussions were held before Magistrate Judge Aaron Goodstein. Judge Goodstein determined that the parties were not in a position to reach settlement and returned the case to this Court for resolution in May 2007.

40. Defendants filed a motion to lift the permanent injunction against the McCaslin Project on October 18, 2007. This motion, along with subsequent response and reply briefs, are currently pending before the Court.

41. Since the McCaslin Project was enjoined in 2005, the Forest Service has proposed seven additional timber sales in the Chequamegon-Nicolet National Forest: the Boulder, Fishbone, Fishel, Twentymile, Long Rail, Medford Aspen and Camp Four projects, respectively. These timber sales cumulatively involve close to 40,000 additional acres of logging and more than 90 additional miles of road construction and reconstruction. These timber sales are in various stages of review, approval and disposition.

42. Several of those additional timber sales are immediately adjacent to, or nearby, one or more of the six timber sales previously approved in 2003.

43. The Boulder timber sale is located near the McCaslin timber sale. Both of these proposed timber sales contain habitat for Red-shouldered hawks, Northern goshawks, and other forest interior sensitive species.

44. Plaintiffs filed detailed comments during the administrative consideration process on all seven of these additional timber sales.

45. Plaintiffs settled their challenge to the Long Rail timber sale with Defendants at the administrative level in March 2007 after having filed an administrative appeal of the initial approval.

46. Plaintiffs settled their challenge to the Boulder timber sale with Defendants at the administrative level in June 2007 after having filed an administrative appeal of the initial approval.

47. Plaintiffs filed an administrative appeal of the proposed Twentymile timber sale in April 2007. This appeal was denied by the Forest Service. Plaintiffs appealed the Defendants' final approval of the Twentymile timber sale to this Court in July 2007.

48. Plaintiffs filed an administrative appeal of the proposed Fishbone timber sale in August 2007. This appeal was denied by the Forest Service. Plaintiffs appealed the Defendants' final approval of the Fishbone timber sale to this Court in January 2008.

49. The Fishel, Medford Aspen and Camp Four timber sales are still in the administrative review process, as is the Cayuga timber sale, which this Court enjoined in 2005.


## V.     <u>APPLICABLE STATUTES AND REGULATIONS</u>

### *National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq.*

50. NEPA is the "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). NEPA seeks to protect the environment by ensuring that public officials "make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1(c).

51. NEPA requires all federal agencies to prepare a detailed Environmental Impact Statement ("EIS") on every proposal for a major federal action which will or may significantly affect the

quality of the human environment. 42 U.S.C. § 4332(2)(C). In an EIS, the agency must identify

the purpose and need of the proposed action, 40 C.F.R. § 1502.13, "rigorously explore and

objectively evaluate all reasonable alternatives" to the proposed action, 40 C.F.R. § 1502.14(a),

and thoroughly analyze the environmental impacts of the proposed action and alternatives, 40

C.F.R. § 1502.16.

52. NEPA's implementing regulations require an agency to consider the direct and indirect

effects of its actions. 40 C.F.R. § 1508.25(c). "Direct effects" are those that "are caused by the

action and occur at the same time and place." 40 C.F.R. § 1508.8(a). "Indirect effects" are those

that "are caused by the action and are later in time or farther removed in distance, but are still

reasonably foreseeable." 40 C.F.R. § 1508.8(b).

53. NEPA's implementing regulations also require an agency to consider the cumulative

impacts of all past, present and reasonably foreseeable future actions, both public and private, on

the environment. 40 C.F.R. § 1508.25(c). "Cumulative impact" is defined as "the impact on the

environment which results from the incremental impact of the action when added to other past,

present, and reasonably foreseeable future actions regardless of what agency (Federal or non-

Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7. "Cumulative impacts can

result from individually minor but collectively significant actions taking place over a period of

time." 40 C.F.R. § 1508.7.

54. This Court has held that the agency's discussion of cumulative environmental impacts

must present a "clear picture" of such impacts and must be "sufficiently detailed and specific" to

be "useful to the decision maker in deciding whether, or how, to alter the program to lessen

cumulative impacts." Habitat Education Center v. Bosworth, 363 F. Supp. 2d 1070, 1080 (E.D.

Wis. 2005). This Court stated that the Forest Service's cumulative impacts analysis must be

particularly clear and specific where cumulative environmental impacts may affect a Regional Forester Sensitive Species. Id. at 1082. An insufficiently detailed EIS cannot be cured by studies, memoranda or other documents in the administrative record. Id.

55. NEPA's implementing regulations also require that an agency use "accurate scientific analysis" and "high quality" information in analyzing a proposed action. 40 C.F.R. § 1500.1(b). In addition, the implementing regulations require that an agency ensure the "scientific integrity" of its analyses. 40 C.F.R. § 1502.24.

### *National Forest Management Act, 16 U.S.C. §§ 1600-1687.*

56. NFMA directs the United States Secretary of Agriculture to formulate forest plans for each of the national forests and requires that the Secretary implement regulations to ensure that the plans are prepared in accordance with NEPA. 16 U.S.C. § 1604(g)(1). A forest plan is a programmatic document that guides all natural resource management activities by identifying resource management practices, projected levels of production of goods and services, and the location where various types of resource management may occur. 16 U.S.C. § 1604(g)(3). All site-specific projects, such as timber sales, must be consistent with the governing forest plan. 16 U.S.C. § 1604(i).

57. NFMA's implementing regulations, which govern the Chequamegon-Nicolet National Forest Plan, require the Forest Service to ensure the existence of fish and wildlife habitat adequate to maintain viable populations of existing native vertebrate species that are well-distributed throughout the planning area, 36 C.F.R. § 219.19 (1982); 36 C.F.R. § 219.27(a)(6) (1982); and to provide for diversity of plant and animal communities, 36 C.F.R. § 219.26 (1982); 36 C.F.R. § 219.27(a)(5) (1982).

58. Pursuant to guidance in the Forest Service Manual, the Forest Service is also required to identify Regional Forester Sensitive Species, which are those plants and animal species for which population viability is a concern.

59. The Forest Service Manual provides at Section 2672.1 that: "There must be no impacts to sensitive species without an analysis of the significance of adverse effects on the populations, its habitat, and on the viability of the species as a whole. It is essential to establish population viability objectives when making decisions that would significantly reduce sensitive species numbers."

*Administrative Procedure Act, 5 U.S.C. §§ 553-559, 701-706*

60. The Administrative Procedure Act, 5 U.S.C. §§ 553-59, 701-706, provides for judicial review of agency actions, such as those at issue here. A reviewing court shall hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), or without observance of procedure required by law, 5 U.S.C. § 706(2)(D).

## VI.    VIOLATIONS OF NATIONAL ENVIRONMENTAL POLICY ACT

**The Forest Service Violated NEPA by Failing to Reasonably, Effectively and Fully Consider Cumulative Environmental Impacts, 40 C.F.R. § 1508.7 and 1508.25(c).**

61. NEPA's implementing regulations require an agency to consider the cumulative impacts of all past, present and reasonably foreseeable future actions on the environment. 40 C.F.R. § 1508.25(c). Cumulative impacts must be considered regardless of what agency, Federal or non-Federal, or person undertakes them. 40 C.F.R. § 1508.7.

62. The Forest Service did not comply with this cumulative impacts analysis requirement in its Supplemental EIS and 2006 ROD re-approving the McCaslin timber sale project.

63. The Forest Service did not fully and fairly analyze impacts of all past, present and reasonably foreseeable future activities occurring on private lands and state lands in and around the McCaslin Project area. The McCaslin Supplemental EIS reports that over 11,400 acres of the 35,000 acre project area is owned by the timber industry, private individuals or the state of Wisconsin. However, the McCaslin Supplemental EIS provides no clear analysis of what logging activities are occurring on private lands and state lands in and around the project area and what actual impacts these activities have on the environment in the Project area. Instead, the Forest Service appears to assume that logging on private lands and state lands in and around the McCaslin Project area occurs at a similar rate, frequency and intensity as logging on Federal lands and that the environmental impacts, therefore, would also be similar.

64. The Forest Service did not fully and fairly analyze the cumulative environmental impacts of all past, present and reasonably foreseeable timber sales, road-building and other related activities on Federal land throughout the Chequamegon-Nicolet National Forest. If implemented, the McCaslin timber sale will proceed around the same time as twelve other timber sales. These thirteen sales combined will, if executed, result in more than 80,000 acres of logging and about 130 miles of road construction and reconstruction. The cumulative effects analyses contained in the McCaslin Supplemental EIS does not analyze the cumulative environmental impacts of all of the present timber sales, road-building and other related activities, and does not fully analyze the cumulative environmental impacts of other past and reasonably foreseeable timber sales, road construction, reconstruction and maintenance and related activities on public

and private lands in the Chequamegon-Nicolet National Forest, as required by law. Habitat Education Center v. Bosworth, 363 F. Supp. 2d 1070, 1078-79 (E.D. Wis. 2005).

65. The Forest Service did not fully and fairly analyze the impacts of past, present and reasonably foreseeable future logging, road-building and other related activities on other Federal lands in and around the McCaslin Project area. The Supplemental EIS for the McCaslin Project reports that over 200,000 acres of logging occurred on the Nicolet side of the Forest between 1986 and 2005, but it provides no information concerning the cumulative environmental impacts of this past logging in the project area. The Supplemental EIS provides no information about past logging on the Chequamegon side of the Forest.

66. The Forest Service instead assumes that the impacts of past timber sales on Federal land are incorporated into the present environmental condition of the project area. This approach is contrary to this Court's finding that the Forest Service must catalogue all past projects so that decision makers and the public can "discern what individual projects the agency considered when it conducted the analysis." Habitat Education Center v. Bosworth, 363 F. Supp. 2d 1070, 1083 (E.D. Wis. 2005).

67. The McCaslin Supplemental EIS does not fully and fairly analyze cumulative impacts on Red-shouldered hawks, Northern goshawks, and American pine marten from all past, present and reasonably foreseeable future logging and road-building activities throughout the Chequamegon-Nicolet National Forest. The McCaslin Supplemental EIS impermissibly limits its cumulative impacts analysis for these species to the Nicolet portion of the Forest only, although these species are known to occur across the broader Chequamegon-Nicolet National Forest.

68. The McCaslin Supplemental EIS does not fully and fairly analyze the cumulative environmental impacts of proposed logging and road construction, reconstruction and

maintenance activities in the Boulder timber sale, which is located near the McCaslin timber sale. Both the McCaslin timber sale and the Boulder timber sale contain active Red-shouldered hawk and Northern goshawk nests, among other important resources. The McCaslin Supplemental EIS makes no mention of the Boulder timber sale in its discussion of cumulative impacts to Red-shouldered hawks and Northern goshawks.

69. The McCaslin Supplemental EIS does not fully, fairly and accurately analyze cumulative impacts because it overestimates the amount of suitable habitat available to forest interior species of concern. The Forest Service's habitat suitability calculation for Northern goshawks, Red-shouldered hawks and American pine marten is based on three factors: tree age, tree species, and the amount of protective cover offered by surrounding branches (canopy cover). This model fails to account for other key factors – such as stand structure (including woody debris), patch size and fragmentation and proximity to water – that are essential elements of suitable habitat for these species. If these key elements were factored into a habitat suitability calculation, then significantly fewer acres within the Chequamegon-Nicolet National Forest would be considered "suitable habitat" for Northern goshawks, Red-shouldered hawks and American pine marten.

70. The McCaslin Supplemental EIS does not fully and fairly analyze cumulative impacts because it ignores or fails to fully and fairly assess direct and indirect environmental impacts.

71. The Supplemental EIS does not fully and fairly analyze the impacts of logging on stand structural characteristics such as woody debris, which is an important habitat element for key species of concern.

72. The Supplemental EIS does not fully and fairly analyze the impacts of road building on the Forest landscape and on species of concern.

73. The Supplemental EIS does not fully and fairly analyze the impacts from widespread logging of old-age class aspen trees throughout the Chequamegon-Nicolet National Forest, including the McCaslin Project area.

74. The Supplemental EIS does not fully and fairly analyze the impacts associated with white-tailed deer population density in the McCaslin Project area.

75. The EIS ignores potential impacts to sensitive hawk species by failing to demonstrate that the 30-acre buffer zones around existing nest sites for Northern goshawks and Red-shouldered hawks are effective.

### The Forest Service Violated NEPA by Failing to Rigorously Explore and Objectively Evaluate Alternatives, 40 C.F.R. § 1502.14(a).

76. The Supplemental EIS for the McCaslin Project identifies the alternative enjoined by this Court in 2005 as the Defendants' "preferred" project alternative. The 2006 ROD for the McCaslin Project approves this preferred alternative as the agency's selected alternative. By identifying a preferred alternative, the Forest Service violated NEPA's requirement that all reasonable action alternatives be evaluated rigorously and objectively.

### The Forest Service Violated NEPA by Failing to Fully and Fairly Assess the Most Recent Scientific Information, 40 C.F.R. §§ 1500.1(b) and 1502.24.

77. Plaintiffs provided scientific evidence, including recent species population monitoring reports, which demonstrated that the continued viability of Northern goshawks, Red-shouldered hawks, and the American pine marten are threatened. Plaintiffs provided this scientific data in their EIS comments and administrative appeal filings. The McCaslin Supplemental EIS does not fully and fairly analyze the scientific evidence offered by the Plaintiffs. In response to Plaintiffs' comments, the Forest Service claims that these monitoring reports are inadequate evidence that

populations of forest interior species are in decline on the National Forest. The McCaslin Supplemental EIS states that habitat for these forest interior species is abundant and improving and that population trends among these species are stable to increasing.

## VII.    VIOLATIONS OF NATIONAL FOREST MANAGEMENT ACT

### The Forest Service Violated NFMA by Failing to Ensure the Viability of Regional Forester Sensitive Species, 36 C.F.R. §§ 219.19, 219.26, and 219.27

78. NFMA's implementing regulations, which govern the Chequamegon-Nicolet National Forest Plan, require the Forest Service to ensure the existence of fish and wildlife habitat adequate to maintain viable populations of existing native vertebrate species that are well-distributed throughout the planning area, 36 C.F.R. § 219.19 (1982); 36 C.F.R. § 219.27(a)(6) (1982). The Forest Service did not comply with these NFMA viability requirements.

79. The Defendants have not reasonably ensured that they will maintain sufficient habitat to support viable populations of certain Regional Forester Sensitive Species. 36 C.F.R. § 219.19 (1982). The McCaslin Supplemental EIS confirms that a large portion of the Project area to be logged contains "forest interior" habitat type, which is preferred by Northern goshawks, Red-shouldered hawks and American pine marten.

80. The American pine marten is listed as endangered in Wisconsin.

81. Northern goshawks and Red-shouldered hawks are listed as threatened species in Wisconsin.

82. All three species are designated as Regional Forester Sensitive Species.

83. All three species are known to be declining within the McCaslin Project area and elsewhere in the Chequamegon-Nicolet National Forest.

84. The Forest Service has not ensured that viable populations of species of concern will be "well distributed in the planning area." 36 C.F.R. § 219.27(a)(6) (1982). The 2004 Forest Plan provides that only Forest Management Areas 2B, 3B and 4B will be managed specifically for forest interior species. Other areas of the National Forest could be managed to entirely eliminate habitat that might be suitable for these species, although many members of such species already inhabit these areas.

85. The Forest Service has failed to undertake appropriate monitoring of populations of Regional Forester Sensitive Species in the McCaslin Project area. Instead, the Forest Service extrapolates estimates of Regional Forester Sensitive Species from an assessment of available habitat. This assessment is unreliable because the Forest Service employs a flawed habitat suitability model as described above in Paragraph 69.


## VIII.   CLAIMS FOR RELIEF

## COUNT I

**VIOLATIONS OF THE NATIONAL ENVIRONMENTAL POLICY ACT AND THE
ADMINISTRATIVE PROCEDURE ACT**

86. Plaintiffs reassert and re-allege Paragraphs 1 through 85 above.

87. The Defendants violated NEPA and its implementing regulations, 40 C.F.R. §§ 1500-1517, in approving the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project because they do not reasonably, fully, fairly and effectively analyze the cumulative impacts of all past, present and reasonably foreseeable future logging projects, public and private, in the Chequamegon-Nicolet National Forest area.

88. The Defendants violated NEPA and its implementing regulations in approving the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project because they do not rigorously evaluate and fully consider reasonable alternatives to the proposed actions.

89. The Defendants violated NEPA and its implementing regulations in approving the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project because they are based on inadequate, outdated and unreliable scientific information.

90. The Defendants' failures to comply with NEPA and its implementing regulations and their approval of the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project are arbitrary, capricious, not in accordance with law, an abuse of discretion, and without observance of procedure required by law and, therefore, violate the APA. 5 U.S.C. § 706(2).

## <u>COUNT II</u>

### VIOLATIONS OF THE NATIONAL FOREST MANAGEMENT ACT AND THE ADMINISTRATIVE PROCEDURE ACT

91. Plaintiffs reassert and re-allege Paragraph 1 through 85 above.

92. The Defendants violated NFMA and its 1982 implementing regulations, 36 C.F.R. §§ 200-297, in approving the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project because they fail to ensure the continued viability of Regional Forester Sensitive Species.

93. The Defendants' failures to comply with NFMA and its implementing regulations and their approval of the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project are arbitrary, capricious, not in accordance with law, an abuse of discretion, and without observance of procedure required by law and, therefore, violate the APA. 5 U.S.C. § 706(2).

## IX.    RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in favor of Plaintiffs and against the Defendants as follows:

1.    Declare that the Defendants violated NEPA, NFMA and the APA by approving the 2006 Record of Decision and the Supplemental EIS authorizing the McCaslin Project timber sale, including logging and road construction, reconstruction and maintenance activities.

2.    Declare that the Defendants' approval of the 2006 Record of Decision and the Supplemental EIS for the McCaslin Project was arbitrary, capricious, an abuse of discretion, and contrary to law and without the observance of procedures required by law.

3.    Continue in force the permanent injunction against the McCaslin Project timber sale unless and until the Defendants fully comply with requirements of NEPA, NFMA and the APA.

4.    Enter an Order directing the Defendants to ensure the viability of Regional Forester Sensitive Species by: (1) maintaining adequate habitat for Regional Forester Sensitive Species that is well-distributed throughout the Chequamegon-Nicolet National Forest; and (2) monitoring population trends of Regional Forester Sensitive Species in the Chequamegon-Nicolet National Forest.

5.    Enter an Order that the Plaintiffs recover their reasonable attorneys' fees and costs incurred in connection with this action, as provided for under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and other applicable law; and

6.    Provide such additional and further relief as the Court may deem necessary, just and reasonable and in the public interest.

Dated: February 5, 2008

_Howard Learner_

_____

Howard A. Learner
Kathrine Dixon
Bradley Klein
Environmental Law and Policy Center
35 East Wacker Drive, Suite 1300
Chicago, Illinois 60601
Phone: (312) 673-6500
Fax:    (312) 795-3730
Email: hlearner@elpc.org

and

Brady C. Williamson
Sean O'D. Bosack
Godfrey & Kahn, S.C.
780 North Water Street
Milwaukee, WI 53202
Phone: (414) 273-3500
Fax:    (414) 273-5198
Email: sbosack@gklaw.com


Attorneys for Plaintiffs Habitat Education
Center, David Zaber, Ricardo Jomarron,
Don Waller and Environmental Law and
Policy Center

24

Case 2:04-cv-00254-LA   Filed 02/06/2008   Page 24 of 24   Document 174-2
Case 2:04-cv-00254-LA   Filed 06/05/08   Page 24 of 24   Document 171-2